**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

SPRINT SOLUTIONS, INC. and
SPRINT COMMUNICATIONS COMPANY
L.P.,                                                          1:16-cv-01420-NLH-AMD

    Plaintiffs,                                      **OPINION**

v.

J&S INVESTMENTS OF DELAWARE,
INC. doing business as
CELLUSALES, SARABJIT SINGH
also known as SAM SINGH,
FRANK J. ALTAMURA, KARAMJEET
SINGH also known as
RICKY SINGH,

    Defendants.

---

<u>**APPEARANCES**</u>:

JARRETT KIRK VINE
POLSINELLI PC
222 DELAWARE AVENUE
SUITE 1101
WILMINGTON, DE 19801

JASON A. NAGI
POLSINELLI PC
600 THIRD AVENUE, 42ND FLOOR
NEW YORK, NY 10016

STACEY K. SUTTON
JAMES B. BALDINGER
JENNIFER YASKO
CARLTON FIELDS JORDEN BURT, P.A.
525 OKEECHOBEE BOULEVARD -- SUITE 1200
WEST PALM BEACH, FL 33401

GAIL E. PODOLSKY
CARLTON FIELDS JORDEN BURT, P.A.
1201 WEST PEACHTREE STREET, SUITE 3000
ATLANTA, GEORGIA 30309

    On behalf of Plaintiffs

CRAIG S. HILLIARD
GENE MARKIN
STARK & STARK, PC
PRINCETON PIKE CORPORATE CENTER
993 LENOX DRIVE - BUILDING TWO
PO BOX 5315
PRINCETON, NJ 08543-5315

    On behalf of Defendants J&S Investments of Delaware, Inc.,
    doing business as CELLUSALES, Frank J. Altamura, and
    Sarabjit Singh, also known as Sam Singh

SABINA DHILLON
LAW FIRM OF SABINA DHILLON, LLC
103 CARNEGIE CENTER, SUITE 300
PRINCETON, NJ 08540

    On behalf of Defendant Karamjeet Singh, also known as Ricky
    Singh

**HILLMAN,** District Judge

    This case involves claims concerning the illegal trafficking

of wireless phones overseas.  Pending before the Court are two

motions.  Plaintiffs, Sprint Solutions, Inc. and Sprint

Communications Company L.P. (hereinafter "Sprint") have moved to

dismiss the counterclaims lodged against it by Defendant

Karamjeet Singh, also known as Ricky Singh.  Defendant Frank J.

Altamura has moved to dismiss four counts in Sprint's complaint

against him for Sprint's failure to properly plead those counts

in accordance with Federal civil Procedure Rules 9(b) and

12(b)(6).  For the reasons expressed below, Sprint's motion will

be granted, and Altamura's motion will be denied.

## BACKGROUND

Sprint sells wireless handsets and other mobile devices under various brands, including, Sprint, Sprint Prepaid, Boost Mobile, Virgin Mobile, payLo, and Assurance Wireless, for use on Sprint's wireless network at prices significantly below the wholesale price of the phones to make them more widely accessible to consumers. Briefly summarized from Plaintiff's 48-page Complaint, Defendants J&S Investments of Delaware, Inc. d/b/a Cellusales, Sarabjit Singh a/k/a Sam Singh, Frank J. Altamura, and Karamjeet Singh a/k/a Ricky Singh, as well as other co-conspirators, are perpetrators of an unlawful scheme to profit from the illegal acquisition and resale of new Sprint wireless handsets by stealing the substantial financial investment that Sprint makes in its phones, for their own profit and to the detriment to Sprint and its customers.[1]

---

[1] Sprint's Complaint details the alleged mobile phone trafficking scheme. Defendants and their co-conspirators acquire new Sprint phones through various methods, including the use of "runners" (an individual or entity that makes multiple purchases of new Sprint phones on behalf of phone traffickers) and "credit mules" (an individual or entity that signs up for wireless service with Sprint – never intending to comply with the terms of the agreement – to obtain new subsidized Sprint phones for phone traffickers). As part of the scheme, the phones, which may be purchased and sold multiple times, ultimately end up in the hands of someone other than the consumer with whom Sprint has a business relationship, and the phones are "unlocked" so they will operate on wireless networks other than Sprint. Often the ultimate user of the phone is located overseas, in a country

3

Defendant Cellusales was initially identified as a potential trafficker through its profile on the online marketplace CellPex, offering new iPhones for sale.  Sprint's undercover investigators responded to the advertisement and contacted Defendant Sam Singh, who is Cellusales's Director of Global Distribution.  At an in person meeting on January 13, 2016, Sam Singh confirmed to the investigator that Defendants are handset traffickers who acquire new phones in bulk that are unlocked and exported for resale overseas.  During its investigation, Sprint learned, *inter alia*, that Defendants were actively looking to enter into an open purchase order to buy 2,000 new Sprint phones per week, all of which they confirmed would be unlocked and exported, to be used

---

where the wireless service provider does not underwrite the cost of new phones.  The scheme takes advantage of the fact that Sprint invests in its phones to reduce the costs for its consumers; whereas wireless service providers in other countries do not.  By obtaining the new Sprint phones under false or fraudulent pretenses from Sprint and reselling or diverting them to other markets where phones are not subsidized, the scheme converts Sprint's investment dollars into profits for Defendants and their co-conspirators.  In addition to the pecuniary losses caused by Defendants' theft of Sprint's mobile devices, investment in the phones, lost sales and market expenses, and lost expected customer revenue, Defendants' misconduct has harmed Sprint's relationships with its customers, dealers, retailers, and others.  Defendants' scheme also involves unlawfully accessing Sprint's protected computer systems and wireless network; trafficking of Sprint's protected and confidential computer passwords; willful infringement of Sprint's trademarks; and/or stealing legitimate customer upgrades, causing substantial damage to Sprint's brand, image, and reputation.  (See Docket No. 1 at 2-3.)

on wireless networks other than Sprint.

Accordingly, Sprint filed the instant suit against Defendants for common law and statutory unfair competition, tortious interference with existing and prospective business relations and existing contract, conspiracy to commit fraud and fraudulent misrepresentation, unjust enrichment, common law fraud and fraudulent misrepresentation, violations of the Computer Fraud and Abuse Act ("CFAA"), trademark infringement and false advertising under the Lanham Act, contributory trademark infringement, conversion, and violations of the New Jersey Computer Fraud and Abuse Act.  The Complaint seeks monetary damages, attorneys' fees and costs, and injunctive relief.

Defendants, through previous counsel, filed their Answers to Sprint's Complaint, denying Sprint's claims.  In his Answer, Defendant Ricky Singh lodged two counterclaims against Sprint - "False and Malicious Allegations" and "Frivolous Litigation."[2] Sprint has moved to dismiss those counterclaims, arguing that they are not cognizable claims.  Singh has opposed Sprint's motion.

Even though Defendant Frank J. Altamura filed an Answer to

---

[2] Ricky Singh also filed cross-claims against his co-defendants, but he has since voluntarily dismissed those cross-claims. (Docket No. 18.)

Sprint's Complaint, Altamura's current counsel has moved to dismiss four counts in Sprint's Complaint against him.  Altamura also asks that the Court permit him to file an amended Answer after the resolution of his motion to dismiss.  Sprint has opposed Altamura's motion as procedurally improper, but Sprint also argues that if Altamura's motion is considered by the Court, it should be denied because Sprint's claims against Altamura are properly pleaded and substantively viable.

## **DISCUSSION**

### **A.   Subject Matter Jurisdiction**

This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1338 because Sprint's claims for violation of the United States Trademark Act, Title 15 of the United States Code and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq. arise under federal law.[3]  This Court has supplemental

---

[3] Sprint states that subject matter jurisdiction also exists under 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiffs and Defendants.  Subject matter jurisdiction under § 1332 has not been established, however, because the citizenship of Plaintiff Sprint Communications Company L.P. is not properly pleaded.  Sprint's Complaint avers that Sprint Communications Company L.P. is a Delaware limited partnership with its principal place of business in Overland Park, Kansas, but the citizenship of all the partners in a limited partnership must be provided for diversity jurisdiction. Swiger v. Allegheny Energy, Inc., 540 F.3d 179, 182 (3d Cir. 2008).  Because this Court has subject matter jurisdiction under § 1331, whether jurisdiction exits under § 1332 is not material at this time.

jurisdiction pursuant to 28 U.S.C. § 1367 over Sprint's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

**B.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d

Cir. 2008) (stating that the "Supreme Court's Twombly
formulation of the pleading standard can be summed up thus:
'stating . . . a claim requires a complaint with enough factual
matter (taken as true) to suggest' the required element.  This
'does not impose a probability requirement at the pleading
stage,' but instead 'simply calls for enough facts to raise a
reasonable expectation that discovery will reveal evidence of'
the necessary element").  A court need not credit either "bald
assertions" or "legal conclusions" in a complaint when deciding
a motion to dismiss.  In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the
burden of showing that no claim has been presented.  Hedges v.
U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages,
Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A court in reviewing a Rule 12(b)(6) motion must only
consider the facts alleged in the pleadings, the documents
attached thereto as exhibits, and matters of judicial notice.
S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,
181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,
however, "an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's
claims are based on the document." Pension Benefit Guar. Corp.
v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.

9

1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

### C.  Analysis

#### 1.  *Plaintiffs' motion to dismiss Defendant Ricky Singh's Counterclaims*

Singh's counterclaim complaint contends that even though Singh was a one-time shareholder of J&S Investments, he sold his shares to co-defendant Sarabjit Singh because he had been severely ill prior to the alleged conduct by Defendants, and he had no involvement in the alleged scheme.  Despite informing Sprint's counsel of this, Singh claims that Sprint is frivolously pursuing its baseless case against him, to his great detriment.  Singh alleges that Sprint's conduct constitutes "False and Malicious Allegations" (Count One), and "Frivolous Litigation" (Count Two) under New Jersey state court R. 1:4-8 and N.J.S.A 2A:15-59.1, New Jersey's Frivolous Litigation Statute.

Sprint has moved to dismiss Singh's counterclaims because they are not cognizable claims, at least as they are currently presented.  The Court agrees.  The argument and factual content of Singh's counterclaim complaint may serve as the basis for a

10

motion filed under Federal Civil Procedure Rules 11 (sanctions),
12 (defenses and objections), 56 (summary judgment) or any other
relevant Federal and Local Civil Procedure Rule, but the
malicious prosecution claim is premature, and the frivolous
litigation claim cannot serve as stand-alone claim.  See Penwag
Property Co., Inc. v. Landau, 388 A.2d 1265, 1266 (N.J. 1978)
("It is not appropriate to institute a suit or file a
counterclaim until the litigation has terminated in favor of the
party who asserts the malicious prosecution cause of action.");
Marenbach v. City of Margate, 942 F. Supp. 2d 488, 496 (D.N.J.
2013) (citing N.J.S.A 2A:15-59.1; Fed. R. Civ. P. 11) ("One
requirement of the sanctions provisions is that the party
seeking sanctions must file an independent motion or
application, separate from any substantive motion that party
files.").  Consequently, Singh's counterclaims as they are
currently pleaded must be dismissed.[4]

---

[4] One detriment Singh alleges he has suffered by Sprint's lawsuit
is that his business relationship with Verizon Wireless was
terminated due to this lawsuit.  Verizon's May 1, 2016
termination letter attached to Singh's counterclaim shows that
Verizon terminated their relationship "without cause" as of
April 1, 2016, which it was contractually permitted to do.
(Docket No. 18-1.)  Verizon also states that because of the
allegations in the Sprint lawsuit, it had grounds for a "with
cause" termination "had the agent agreements between Verizon
Wireless and [Singh] remained in effect after April 1, 2016,
which they did not."  (Id.)  Even if Verizon's termination of
its business relationship with Singh was related to the

**2.   Defendant Altamura's Motion to Dismiss Counts III, IV, V, and XII of Sprint's Complaint**

Defendant Frank Altamura has moved to dismiss four counts in Sprint's Complaint:  Count Three (Conspiracy to Commit Fraud) and Count Five (Common Law Fraud) for failing to meet the pleading requirements of Rule 9(b), and dismiss Count Four

---

allegations in Sprint's lawsuit, Singh does not allege that Sprint filed its suit against Singh in order to interfere with his relationship with Verizon or any other business relationship.  That is a key distinction between a "malicious prosecution" type of claim and an "abuse of process" type of claim, if Singh intended to advance such a claim.  See LoBiondo v. Schwartz, 970 A.2d 1007, 1022 (N.J. 2009) ("Malicious use of process is one of a group of closely related torts that, although ancient in origins, are treated with great caution because of their capacity to chill resort to our courts by persons who believe that they have a criminal complaint or civil claim against another."); Read v. Profeta, 2017 WL 123438, at *3 (D.N.J. January 11, 2017) (expressing that the court was "wary of any expansive interpretation that would routinely permit a defendant to take ordinary denials in its Answer and weaponize them as a tort counterclaim," and dismissing abuse of process claim because the plaintiff had no collateral agenda by filing his suit against defendant, and there was no indication that litigation was instituted as an indirect means of harming a business competitor who is not a party to the action); id. ("Malicious abuse of process . . . consists in the abuse of the court's processes after the filing of a civil complaint. It does not have favorable termination as an element [as does a malicious prosecution claim]."); Yogo Factory Franchising, Inc. v. Ying, 2014 WL 1783146, at *12 (D.N.J. May 5, 2014) (dismissing counterclaim for malicious use of process because the claims against the defendant had "not yet been determined or otherwise terminated in her favor" and dismissing counterclaim for malicious abuse of process because "Defendant's claim is not for the misuse of any subsequently issued process, but rather for the filing of a claim against her at all").  Accordingly, even construing Singh's counterclaim to be one for abuse of process, his allegations do not support such a claim.

(Unjust Enrichment) and Count Twelve (Conversion) for failure to state a claim pursuant to Rule 12(b)(6).

Sprint has opposed Altamura's motion on two bases.  First, Sprint argues that Altamura is procedurally barred from filing his motion pursuant to Rule 12(b)(6).  Second, if the Court should consider Altamura's motion, Sprint argues that its claims against Altamura have been properly pleaded and may stand.

### a.   *Whether Altamura's motion is procedurally proper*

As to Sprint's first argument, the Court finds that Altamura's motion may be considered under the procedural history of this case.  Sprint has set forth the following timeline of events:  Defendant was served with the Complaint in this action on March 17, 2016.  Defendant filed an Answer and Affirmative Defenses on May 16, 2016.  Defendant then served, but did not file, two Amended Answers and Affirmative Defenses on Sprint on May 12th and May 13th.  On June 2, 2016, Altamura obtained new counsel in this matter.  On June 6, 2016, Sprint moved to strike Defendant's affirmative defenses.  During the initial scheduling conference held on June 14, 2016, counsel for Altamura's co-defendants requested additional time to respond to Sprint's Motion to Strike the Affirmative Defenses.  In response to the Court's inquiry as to whether Altamura would need more time, his

new counsel indicated that he would be seeking leave to file an amended answer with new affirmative defenses.  The Court granted Altamura's request to file an amended answer no later than July 15, 2016.  In lieu of filing an amended answer, however, Altamura filed a motion to dismiss pursuant to Rule 12(b)(6).

Sprint argues that such a motion is not proper because Altamura has already filed an Answer to its Complaint, and motions filed pursuant to Rule 12(b)(6) must be filed prior to answering a complaint.  Sprint also argues that when new counsel for Altamura was granted leave to file an amended Answer, Sprint's acquiesce to that request was based on counsel's representation that it would be filing an amended Answer, and not a motion to dismiss.  Sprint further argues that Altamura's motion cannot be considered filed under Rule 12(c), even though the standard of review for a Rule 12(c) motion is the same as a Rule 12(b)(6) motion, because the pleadings are not yet closed due to Altamura's yet-to-be-filed amended Answer.  Sprint has asked not only for the denial of Altamura's motion, but also for attorney's fees arising out of its efforts to oppose the motion.

In response, Altamura argues that as a matter of judicial economy and common sense, his motion should be considered as to its substance.  Altamura argues that Rule 12(h) contemplates the scenario of a defendant presenting a motion to dismiss after an

14

answer has been filed because his answer contains the

affirmative defense of failure to state a claim.[5]  Altamura also

points out the following:

> Requiring Altamura to file an Amended Answer before
> deciding the instant motion, however, will only needlessly
> delay the adjudication of the present motion and require
> further additional, amended pleadings.  Altamura filed the
> instant motion prior to filing his Amended Answer out of
> consideration for efficiency and conservation of resources.
> Should the Court dismiss any portion of Plaintiffs'
> Complaint for failure to state a claim and/or failure to
> satisfy the pleading requirements of Rule 9(b), Altamura's
> Amended Answer will necessarily reflect those changes.
> Moreover, the outcome of the instant motion impacts the
> counter and third-party claims to be brought by Altamura.
> The alternative, as advocated by Sprint, would be for
> Altamura to file an Amended Answer, then re-file the
> present motion, then file a motion for leave to file a
> Second Amended Answer, and then ultimately file a Second
> Amended Answer.  In that case, the end result would be the
> same, just with added delay, expense, and use of judicial
> resources. Since the matter has already been fully briefed,
> the better approach would be to decide the instant motion
> and, thereafter, allow Altamura to file its Amended Answer.

(Docket No. 58 at 4.)

The Court agrees with Altamura.  As the Third Circuit

explained, the differences between Rules 12(b), 12(c), and 12(h)

are purely procedural: (1) a Rule 12(b) motion to dismiss a

complaint must be filed before any responsive pleading; (2) a

Rule 12(c) motion for judgment on the pleadings may be filed

---

[5] Rule 12(h) provides in relevant part, "Failure to state a claim
upon which relief can be granted . . . may be raised: (A) in any
pleading allowed or ordered under Rule 7(a); (B) by a motion
under Rule 12(c); or (C) at trial."  Fed. R. Civ. P. 12(h)(2).

after the pleadings are closed; and (3) a Rule 12(h)(2) provides

that a defense of failure to state a claim upon which relief can

be granted may also be made by a motion for judgment on the

pleadings.   Turbe v. Government of Virgin Islands, 938 F.2d 427,

428 (3d Cir. 1991).   For any of the three Rule 12 motions, the

same standards as under Rule 12(b)(6) are applied.   Id.   Thus,

even though Sprint is generally correct that a motion to dismiss

filed under Rule 12(b)(6) is procedurally faulty if such a

motion is filed after an answer, Rules 12(c) and 12(h) permit

the filing of the functional equivalent of a motion to dismiss

after an answer is filed.   Thus, the Court will apply the Rule

12(b)(6) standard to Altamura's motion, and consider it as

having been filed under Rule 12(h).[6]

---

[6] If Altamura had filed his motion to dismiss prior to filing his
Answer, after resolving that motion, the Court would have
directed Altamura to file his Answer in accordance with the
Court's decision.   This is because Altamura has moved to dismiss
only four of Sprint's claims against him, and Altamura will
remain in the case regardless of the outcome of his motion.   The
same result will occur here, with the only difference being that
Altamura has affirmatively requested that he be permitted to
craft this Answer in response to the Court's decision.   Perhaps
Sprint's argument would be more compelling if Altamura were
seeking the dismissal of all of Sprint's claims against him, but
the Court finds that Rule 12(c) would then apply because
Altamura would be essentially resting on his current Answer.
Rule 12(h) would also still apply.   Moreover, in that scenario,
the Court would have the alternative of construing Altamura's
motion as one for summary judgement under Rule 56, which does
not contain the same Rule 12 procedural limitations - i.e., a
summary judgment motion may be filed pre- or post-answer. See

> **b.   Whether Counts Three, Four, Five and Twelve should be dismissed**
>
> > **i.   Count Three (Conspiracy to Commit Fraud) and Count Five (Common Law Fraud)**

Altamura argues that Sprint has failed to meet the pleading requirements of Rule 9(b) for its claims for fraud and conspiracy to commit fraud.  For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard: "'[A] party must state with particularity the circumstances constituting fraud or mistake,'" but "'[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'"  John Wiley & Sons, Inc. v. Rivadeneyra, 179 F. Supp. 3d 407, 411 (D.N.J. 2016) (quoting Fed. R. Civ. P. 9(b)).  "The circumstances of the fraud must be stated with sufficient particularity to put a defendant on notice of the 'precise misconduct with which [it is] charged.'"  Id. (quoting Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004)).  "'To satisfy this standard, the plaintiff must plead or allege the date, time

---

Fed. R. Civ. P. 56(b) ("Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.").  Thus, even though Sprint was under the impression that Altamura was going to file an amended Answer and the case proceed from there, the Rules permit Altamura to challenge the sufficiency of Sprint's claims by way of a motion to dismiss under this procedural posture.  Accordingly, Sprint is not entitled to its attorney's fees resulting from its opposition to Altamura's motion.

and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'"  Id. (quoting <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007)).

A claim of common law fraud under New Jersey law requires: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.  Id. (citing <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 611, 691 A.2d 350 (1997)).  A plaintiff must plead facts showing who made a misrepresentation to whom, as well as the general content of the misrepresentation, in order to satisfy Rule 9(b).  Id. (citing <u>Lum</u>, 361 F.3d at 224).

A claim for conspiracy to defraud must also be pled with specificity under Rule 9(b).  Id. (citation omitted).  Under New Jersey law, a civil conspiracy is "'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, a principal element of which is to inflict a wrong against or injury upon another, and an overt act that results in damage.'"  Id. (quoting <u>Banco Popular N. Am. v. Gandi</u>, 184 N.J. 161, 177, 876 A.2d 253 (2005)).  The necessary elements of a civil conspiracy are: (1)

a combination of two or more persons; (2) a real agreement or
confederation with a common design; (3) the existence of an
unlawful purpose, or a lawful purpose to be achieved by unlawful
means; and (4) special damages.  Id. at 412 (citing Morganroth &
Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406,
414 (3d Cir. 2003)).

    The Court finds that Sprint's fraud and conspiracy to
commit fraud claims meet the Rule 9(b) standard.  Sprint's
allegations of Altamura's fraud, and the conspiracy between all
the defendants to commit fraud, are detailed in a span of over
eight pages in Sprint's Complaint.  The Court does not need to
recite all of Sprint's allegations to support this finding, but
briefly summarized, Sprint explains in detail how the three
defendants, individually and conspiratorially, interacted with
Sprint's undercover investigator in order to purchase hundreds
of subsidized Sprint iPhones to be unlocked and diverted
overseas.  (See Docket No. 1 at 11-19.)

    With regard to Sprint's claims specifically directed at
Altamura, Sprint relates Altamura's meeting with the
investigator via Skype, and alleges that Altamura (1) "revealed
that he has been in the cell phone business for 30 years and
inquired about the source of the Sprint Phones the investigator
was selling to Defendants"; (2) "[h]e was familiar with both

19

runners and upgrade and add-a-phone fraud"; (3) "Alt[a]mura and
Sam Singh stressed that Defendants' buyer was adamant that the
phones be locked to Sprint so that Defendants could have them
unlocked and that the Phones were going overseas"; and (4)
"Defendants reiterated their request for ESNs and stated that
they could make payment for each delivery of new Sprint Phones
within 24-48 hours." (Id. at 13, ¶ 44.)  A few days later,
Sprint alleges that Alt[a]mura revealed "that while all of the
Phones were going overseas, Defendants needed the Phones to be
denominated 'Clean' in Sprint's system for a period of time to
allow Defendants time to unlock the Phones using their preferred
method." (Id. at 14, ¶ 48.)

Then, on January 29, 2016, "after speaking with Defendants
Altamura and Sam Singh regarding the new buyer, Defendants sent
the investigator a purchase order for the 100 new Sprint Phones.
Defendants explained that an unnamed co-conspirator unlocks
their new Sprint Phones for them within 72 hours and stated that
they will wire the funds within 72 hours of the Phones being
successfully unlocked." (Id. at 15, ¶ 51.)  On February 1,
2016, prior to being served with Sprint's cease and desist
letter, Sprint alleges "Sprint's investigator returned to
Defendants' office in Mt. Laurel, New Jersey where he met with
Defendant Sam Singh and they spoke with Defendant Alt[a]mura by

20

phone.  The office in which the investigator waited, with a representative of Defendants present, contained shipping boxes addressed to Defendant Ricky Singh at CelluSales.  Defendant Alt[a]mura told the investigator that Defendants now had multiple buyers who wanted Sprint Phones in such large quantities that they would be willing to buy Phones that were procured by runners or credit mules.  Before departing, the investigator provided Defendants a sample of 10 new Sprint Phones as a partial delivery on the first order."[7]  (Id. at 15, ¶ 53.)

Altamura has denied that his actions were for anything other than legitimate business transactions.  That denial at the motion to dismiss stage, however, does not mean that Sprint has not pleaded plausible fraud and conspiracy to commit fraud claims against him.  Sprint's allegations against Altamura satisfy Rule 9(b)'s requirement that a plaintiff must "plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,

---

[7] These phones were returned to Sprint by Defendants' former counsel.

742 F.2d 786, 791 (3d Cir. 1984)), abrogated in part on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (explaining that "[i]t is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."). The Complaint is clear that Sprint alleges that Altamura was in the business of illegally trafficking phones, which constitutes fraud, and he acted in concert with his co-defendants.

Altamura also argues that Sprint's fraud claims fail because the transaction between Sprint's investigator and Defendants was never consummated. Without Defendants having actually purchased Sprint phones and trafficked those phones overseas, Altamura argues that Sprint cannot establish that it has suffered any damages, which is fatal to Sprint's fraud claims.

Altamura's argument is too narrow of an interpretation of Sprint's fraud claims. The Complaint alleges that Sprint became aware in June 2015 that Defendants could be potential traffickers by purchasing, unlocking, and then illegally selling Sprint phones to be used on networks other than Sprint's. In order to find out if they were illegal phone traffickers, Sprint

22

used an undercover investigator to contact Defendants and arrange the sale of "clean" Sprint phones to be unlocked by Defendants.  Sprint's investigator also learned that Defendants intended to send those phones overseas.  When Sprint's investigator provided the Electronic Serial Number (ESN) for 100 phones, Defendants illegally unlocked those phones even without having possession of them.  Simply because Sprint did not follow through after that point and permit itself to be defrauded by allowing the trafficking to take place does not preclude Sprint from maintaining its fraud claims.

Based on its undercover investigation, Sprint obtained sufficient evidence to believe that Defendants have illegally trafficked phones, and sufficient evidence to believe they have trafficked Sprint phones, and were intending to further traffic Sprint phones, suffering various damages of as a result, such as theft of Sprint's financial investments in its new Phones, harm to Sprint's brand, image, and reputation, harm to Sprint's relationships with its dealers, retailers, and customers, and infringement to its trademarks, which causes consumer confusion.

"Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud," and "courts have relaxed the rule when factual information is peculiarly

within the defendant's knowledge or control." <u>Craftmatic</u>
<u>Securities Litigation v. Kraftsow</u>, 890 F.2d 628, 645 (3d Cir.
1989) (citation omitted).  Even though these concerns are
present here, Sprint's claims against Altamura do not require
the relaxation of Rule 9(b), because Sprint's fraud and
conspiracy to commit fraud claims against Altamura readily meet
the Rule 9(b) standard.

### ii.   Count Four (Unjust Enrichment) and Count Twelve (Conversion)

Under New Jersey law, to state a claim for unjust
enrichment, "a plaintiff must allege that (1) at plaintiff's
expense (2) defendant received a benefit (3) under circumstances
that would make it unjust for defendant to retain benefit
without paying for it." <u>Volin v. General Electric Company</u>, 189
F. Supp. 3d 411, 422 (D.N.J. 2016) (quotations and citations
omitted).  At the pleading stage, a plaintiff "need only allege
facts sufficient to show: 1) Plaintiff conferred a benefit on
Defendant; and 2) circumstances are such that to deny recovery
would be unjust." <u>Id.</u> (quotations and citations omitted).

The common law tort of conversion in New Jersey is defined
as the "intentional exercise of dominion or control over a
chattel which so seriously interferes with the right of another
to control it that the actor may justly be required to pay the

24

other the full value of the chattel." <u>Chicago Title Ins. Co. v.</u>
<u>Ellis</u>, 978 A.2d 281, 287 (N.J. Super. Ct. App. Div. 2009), <u>cert.</u>
<u>denied</u>, 983 A.2d 1113 (N.J. 2009) (quoting Restatement (Second)
of Torts § 222A(1) (1965)).

Altamura argues the same point for the dismissal of these
claims as he argued for the dismissal of Sprint's fraud claims:
because Altamura never obtained the phones offered for sale by
Sprint's investigator, Sprint cannot show that Altamura
converted the phones for his impermissible purpose, or that
Altamura was unjustly enriched by the trafficking of the phones.
Altamura further argues that Sprint's claims that Altamura in
fact obtained and trafficked Sprint phones are too vague and
conclusory to stand.

Unjust enrichment and conversion claims are cast with a
similar hue as fraud claims, and present the same concerns as to
how a plaintiff may prove such claims when the very nature of
those claims is to conceal a nefarious purpose. Just because
Sprint, at this pleading stage, has not presented concrete proof
that Altamura has in fact trafficked Sprint phones, Sprint's
allegations concerning the typical phone trafficking scheme,
along with the investigator's evidence that Altamura and his co-
defendants were following along the same script as a typical
trafficking scheme, provide the requisite factual basis to

plausibly suggest that Altamura did what Sprint says he did.
Again, Altamura may ultimately prevail if Sprint cannot
substantiate its claims with additional proof developed through
discovery, but Sprint has met the pleaded standard of
Twombly/Iqbal to allow those claims to proceed.

## CONCLUSION

For the reasons stated above, Sprint's motion to dismiss
the counterclaims by Defendant Ricky Singh will be granted.
Defendant Frank Altamura's motion to dismiss Count Three, Count
Four, Count Five and Count Twelve will be denied.  Altamura
shall filed his amended Answer within 15 days of the date of
this Opinion.

An appropriate Order will be entered.


Date:  January 31, 2017           s/ Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.